ALBERS, APPELLANT, *v.* CITY OF CINCINNATI, APPELLEE.

(No. 8724—Decided February 29, 1960.)

*Mr. Robert J. Harris*, for appellant.
*Mr. James W. Farrell, Jr.*, city solicitor, *Mr. Edward A Hogan* and *Mr. Lyle W. Castle*, for appellee.

MATTHEWS, P. J.  The plaintiff, appellant herein, seeks to recover from the defendant, appellee herein, damages on account of personal injuries received by her while using the sidewalk at the intersection of Miller Street and Townsend Avenue, two public streets in the city of Cincinnati.

In her second amended petition, she alleged that the defendant had constructed and maintained a manhole or sewer

lid at the southwest corner of said intersection, and that on June 25, 1956, at 10 p. m., she was walking in a southerly direction on Miller Street, and while doing so she stepped on said manhole cover or sewer lid, and, as she did so the manhole cover or sewer lid tilted, and by reason thereof she was thrown into the manhole and injured.

The plaintiff alleged also that the manhole cover had existed for many weeks and that the defendant knew or should have known of its condition in the exercise of ordinary care.

The plaintiff alleged further that the defendant violated its duty under Section 723.01, Revised Code, to keep the streets within its borders open, in repair, and free from nuisance, in that the manhole lid or sewer cover was one-fourth to one-half inch smaller than the opening it was intended to cover, rendering it unsafe and dangerous, and that defendant was also negligent in not placing a barricade around the manhole, or otherwise warning the public of its defective condition.

The defendant, after admitting its corporate capacity, denied generally the allegations of the second amended petition and alleged the affirmative defenses of contributory negligence and assumption of risk.

At the trial, in addition to detailing her injuries and pain and suffering, the plaintiff testified that about 10 p. m. on June 25, 1956, she was returning home from a visit at the home of Ann Lindsey, who was moving from her home in the neighborhood into a house owned by the plaintiff and in the neighborhood, and was helping her move some miscellaneous articles, including a carton containing empty beer bottles; that this carton had handles on each side and they were carrying it between them; that as they approached this manhole lid or sewer cover she was on the side nearest the curb and stepped up and onto this lid, which tilted and stood on edge, causing her to fall into the sewer up to her arms. She testified that she lived at 3811 Miller Street, only a short distance from this manhole, and had seen it before and had walked over it, but did not know that anything was wrong with it. She testified that she had both feet on the lid and that it "flipped" toward her. She was helped out of the hole by her husband and others who were attracted to the scene.

Ann Lindsey, who was with the plaintiff at the time and was helping her carry the carton, corroborated her in all essentials and, in addition, testified that as they approached the manhole lid she was looking down at it and that it was "*closed and all* but she [plaintiff] stepped on it and down it went."

Witnesses testified that this cover or lid was smaller than the opening—as much as one-fourth to one-half an inch—leaving a gap between it and the frame in which it was placed; and several witnesses who resided in the community said that on many occasions they had heard it rattle or make a noise when stepped upon, and that this noise was so loud that they heard it when in their homes or in their yards. One witness testified that he had warned a group of small boys not to play on the lid lest they be hurt. These witnesses testified that they had heard the rattle of this lid for as much as six months.

At the close of plaintiff's evidence, the court sustained the defendant's motion for an instructed verdict and entered judgment for the defendant. Later, the plaintiff's motion for a new trial was overruled. This appeal was perfected in due course.

The defendant is a municipality, and in its relation to public streets, including sidewalks, acts in a sovereign or governmental capacity, but, by Section 723.01 of the Revised Code, the sovereign right to be exempt from suit is waived, as municipalities are expressly charged by that section with the duty of keeping the streets within its borders open, in repair, and free from nuisance. The duty imposed by this section is relied on by the plaintiff, who asserts that the evidence shows that the defendant failed to perform this duty, to the plaintiff's damage. The defendant disputes this and presents an array of decisions of the Supreme Court of Ohio applying that section, and the duty imposed, to various defects in sidewalks, but so far as we have been advised, or our research has disclosed, there is no Supreme Court case based upon evidence of a defective or misplaced manhole cover forming a part of a public sidewalk.

Typical of these cases discussed at the bar are *Kimball* v. *City of Cincinnati*, 160 Ohio St., 370, 116 N. E. (2d), 708; *Griffin* v. *City of Cincinnati*, 162 Ohio St., 232, 123 N. E. (2d), 11; and *Kindle* v. *City of Akron*, 169 Ohio St., 373, 159 N. E. (2d), 764, in which the court was engaged with the problem of determin-

ing whether the condition of the sidewalk, as alleged by the plaintiff or as his evidence had any tendency to prove, was reasonably safe for travel in the ordinary mode. Those cases hold that the sidewalk in the condition proven in those cases was a fulfillment of the municipalities' duty to keep the sidewalk in repair and free from nuisance. Those cases, in effect, hold that a sidewalk so constructed in the beginning would be a discharge of the municipality's duty, and so long as it remained in that condition no liability could accrue to any user by reason of its condition.

In the case before us we are confronted with an entirely different situation. Here, we have a hole in the sidewalk large enough to allow the plaintiff to fall into it, and deep enough so that she went down to her armpits. A sidewalk with such a hole in it certainly could not be declared as a matter of law to be reasonably safe for travel in the ordinary mode.

But it is said that this manhole was covered by an iron lid and that this lid rendered the sidewalk reasonably safe for travel by pedestrians. However, that depended upon the sufficiency of the lid. A lid that would tilt and permit the unsuspecting to be precipitated into the hole would not serve that purpose. And a lid that was apparently safe, but was actually unsafe, is a trap, and instead of removing the danger, only adds to it.

So we are of the opinion that there was evidence that this sidewalk was not reasonably safe for travel.

However, the burden was also upon the plaintiff to prove, in addition to proving that this manhole lid was not an adequate protection against the danger from the manhole at the time, that the defendant had notice of its inadequacy for a reasonable time in order to enable it to repair it. And it is asserted by the defendant that there is no evidence of such notice. In this, we think the defendant is mistaken. The duty upon the defendant is to use reasonable care in inspecting its sidewalks, and this certainly requires that inspections be repeated at reasonable intervals. There is no evidence that this manhole lid had ever been inspected. There is adequate evidence that something was wrong with it. It was loose, did not fit the opening and rattled when stepped upon, and this condition had existed for at least

six months. Had the defendant during those six months inspected this lid, it would or should have discovered these defects and the cause thereof.

There is evidence that this cover was on the manhole, apparently in proper position at the time to enable the plaintiff to pass safely over it, and it was only because of the defects which a reasonable inspection would have revealed that the lid tilted and caused her to fall.

In 66 Corpus Juris Secundum, 642, Section 11a, the rule is stated in this language: "Whatever puts a person on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding."

The duty to make inspection at reasonable intervals rested upon the defendant at all times. We believe that there is ample evidence that had that duty been performed it would have led to the knowledge that this manhole lid was defective and a menace to life and limb.

We are of the opinion that the court erred in instructing a verdict for the defendant.

The court authorized a view of the premises. It was developed at the trial that the location had been altered after this accident. The court permitted evidence of these alterations. We think the court did not err in so doing. And we find no other error in the record.

For error in instructing a verdict for the defendant, the judgment is reversed and the cause remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

Long and O'Connell, JJ., concur.